# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION (DAYTON)

|  |  |  |
|---|---|---|
| IN RE MCSi, INC., SECURITIES LITIGATION | : : : : | Case No. 3:03-cv-015 HON. WALTER HERBERT RICE |

## LEAD PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND CLASS CERTIFICATION

PLEASE TAKE NOTICE that lead plaintiffs Fuller & Thaler Asset Management, Inc. and Paul Bykowski ("Lead Plaintiffs") hereby move this Court for an Order providing for: (1) preliminary approval of the proposed settlement; (2) preliminary certification of a class for settlement purposes only, including appointment of Lead Plaintiffs as class representatives and Bernstein Liebhard & Lifshitz, LLP as class counsel; (3) approval of the form of notice to the class, which, among other things, describes the terms of the proposed settlement and the proposed plan for disseminating the notice and proof of claim to class members; and (4) a date for a hearing to consider final approval of the proposed settlement and the foregoing matters. In support of this motion, for which Lead Plaintiffs request a hearing at the Court's earliest available date, Lead Plaintiffs submit the Declaration of Mark T. Millkey, dated June 11, 2008, with exhibits, and the Memorandum in Support of Lead Plaintiffs' Motion for Preliminary Approval of Settlement and Class Certification.

DATED:     New York, New York
           June 11, 2008

Respectfully submitted,

s/Richard S. Wayne
Richard S. Wayne Attorney Bar Number 0022390
**STRAUSS & TROY**
150 East Fourth Street
Cincinnati, OH 45202-4018
P: (513) 621-2120
F: (513) 241-8259
Rswayne@strausstroy.com

*Liaison Counsel for Lead Plaintiffs*

**BERNSTEIN LIEBHARD & LIFSHITZ, LLP**
Jeffery M. Haber
Mark T. Millkey
10 East 40th Street
New York, NY 10016
P: (212) 779-1414
F: (212) 779-3218
Haber@Bernlieb.com
Millkey@Bernlieb.com

*Lead Counsel for Plaintiffs and the Class*

**CHITWOOD HARLEY HARNES LLP**
Craig G. Harley
1230 Peachtree St. NE
2300 Promenade II
Atlanta, Georgia 30309
P: (404) 873-3900
F: (404) 876-4476
Charley@chitwoodlaw.com

*Counsel for Paul Bykowski*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION (DAYTON)

|  |  |  |
|---|---|---|
| IN RE MCSi, INC., | : | Case No. 3:03-cv-015 |
| SECURITIES LITIGATION | : | |
| | : | HON. WALTER HERBERT RICE |

## MEMORANDUM IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND CLASS CERTIFICATION

Jeffrey M. Haber
Mark T. Millkey
**BERNSTEIN LIEBHARD & LIFSHITZ, LLP**
10 East 40th Street - 22nd Floor
New York, NY 10016
P: (212) 779-1414
F: (212) 779-3218
Haber@Bernlieb.com
Millkey@Bernlieb.com

*Lead Counsel for Plaintiffs and the Class*

Richard S. Wayne
Bar Number 0022390
**STRAUSS & TROY**
150 East Fourth Street
Cincinnati, OH 45202-4018
P: (513) 621-2120
F: (513) 241-8259
Rswayne@strausstroy.com

*Liaison Counsel for Lead Plaintiffs*

June 11, 2008

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................. iii

I.    Introduction .......................................................................................... 1

II.   Background ........................................................................................... 3

      A.    The Litigation ............................................................................ 3

      B.    Summary of the Settlement ....................................................... 6

III.  Argument ............................................................................................. 6

      A.    The Settlement Warrants Preliminary Approval........................ 6

            1.    The Settlement of This Action Comports with the Public Policy of
                  Encouraging Negotiated Settlement of Private Disputes............................ 6

            2.    The Settlement Merits Preliminary Approval as the First Step to
                  Final Approval ...................................................................... 7

            3.    The Settlement is the Product of Serious, Informed, Non-Collusive
                  Negotiations ......................................................................... 7

                  (a)   The Settlement was the Result of Arm's-Length
                        Negotiations and, Therefore, is Presumed to be Fair..................... 7

                  (b)   The Settlement has No Obvious Deficiencies ............................... 8

                  (c)   The Settlement Falls within the Range of Possible
                        Approval ...................................................................... 8

                        (1)   The Risks, Expense, and Delay of Further
                              Litigation............................................................9

                        (2)   The Likelihood of Success on the Merits Weighed
                              Against the Amount and Form of the Relief
                              Offered in the Settlement.........................................10

                        (3)   The Judgment of Experienced Counsel Who
                              Have Competently Evaluated the Strength of
                              Their Proofs......................................................11

                        (4)   The Amount of Discovery Completed and the
                              Character of the Evidence Uncovered.........................11

i

B.     The Plan of Allocation is Fair to the Class..............................................12

C.     The Class Satisfies the Requirements of Fed. R. Civ. P. 23 ................................ 12

      1.     The Class is So Numerous that it is Impractical to Bring All Class Members Before the Court......................................................... 13

      2.     Lead Plaintiffs and the Class Share Common Legal and Factual Questions........................................................................ 14

      3.     Lead Plaintiffs' Claims are Typical of the Members of the Class............ 15

      4.     Lead Plaintiffs Will Fairly and Adequately Protect the Interests of the Class .................................................................... 15

      5.     This Action Meets the Requirements of Rule 23(b)(3) ........................... 16

           (a)     Common Questions of Law and Fact Predominate in This Securities Class Action ................................................ 16

           (b)     A Class Action is Superior to Other Available Methods for the Fair and Efficient Adjudication of This Controversy ............. 17

D.     The Notice and Administration of the Settlement is Fair and Will Protect the Interests of Class Members ........................................................... 18

      1.     The Notice and Procedure to Disseminate the Notice to the Class is Adequate ...................................................................... 18

      2.     The Claims Administrator Will Act in the Class's Best Interests ............ 19

IV.     CONCLUSION........................................................................ 20

# TABLE OF AUTHORITIES

## CASES

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997)..........................................................................................12, 17, 18

*In re Am. Bank Note Holographics, Inc.,*
  127 F. Supp. 2d 418 (S.D.N.Y. 2001)...............................................................12

*In re Am. Med. Sys., Inc.,*
  75 F.3d 1069 (6th Cir. 1996) .............................................................................14, 15

*Andrews v. Bechtel Power Corp.,*
  780 F.2d 124 (1st Cir. 1985)...............................................................................13

*Bank of Am. Nat'l Trust & Sav. Assoc. v. Hotel Rittenhouse Assocs.,*
  800 F.2d 339 (3d Cir. 1986)................................................................................7, 10

*Bailey v. AK Steel Corp.,*
  No. 1:06-cv-468 (TSB),
  2008 WL 495539 (S.D. Ohio Feb. 21, 2008)....................................................9, 11

*Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
  105 F.R.D. 506 (S.D. Ohio 1985) .....................................................................13, 16

*Berry v. Sch. Dist. of City of Benton Harbor,*
  184 F.R.D. 93 (W.D. Mich. 1998)......................................................................9, 11

*In re Broadwing Inc. Sec. Litig.,*
  Civ. A. No. C-1-02-795, slip op. (S.D. Ohio Nov. 30, 2006) .........................13

*In re Cardizem CD Antitrust Litig.,*
  218 F.R.D. 508 (E.D. Mich. 2003) ....................................................................9, 11

*In re Delphi Corp. Sec., Der. & E.R.I.S.A Litig.,*
  248 F.R.D. 483 (E.D. Mich. 2008) ..............................................10, 14, 15, 16, 17

*In re DPL Inc. Sec. Litig.,*
  Cons. Case No. C-3-02-355, slip op. (S.D. Ohio Dec. 22, 2003) ..................13

*GenCorp, Inc., v. AIU Ins. Co.,*
  297 F. Supp. 2d 995 (N.D. Ohio 2003)..............................................................6

*Gen. Tel. Co. of Nw., Inc. v. EEOC,*
    446 U.S. 318 (1980) ...................................................................................................14

*Gen. Tel. Co. of Sw. v. Falcon,*
    457 U.S. 147 (1982) ...................................................................................................15

*In re Globstar Sec. Litig.,*
    No. Civ. 01-1748 (PKC),
    2004 WL 2754674 (S.D.N.Y. Dec. 1, 2004) ............................................................14

*Gonzales v. Cassidy,*
    474 F.2d 67, 73 (6th Cir. 1973) ................................................................................15

*Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.,*
    332 F.3d 976 (6th Cir. 2003) .......................................................................................6

*Granada Invs., Inc. v. DWG Corp.,*
    962 F.2d 1203 (6th Cir. 1992) .....................................................................................9

*Hemphill v. San Diego Assoc. of Realtors, Inc.,*
    225 F.R.D. 616 (S.D. Cal. 2005) ................................................................................7

*In re IPO Sec. Litig.,*
    226 F.R.D. 186 (S.D.N.Y. 2005) ................................................................................7

*IUE-CWA v. GMC,*
    238 F.R.D. 583 (E.D. Mich. 2006) .............................................................................8

*In re Kmart Corp. Sec. Litig.,*
    No. 95-CS-75584-DT (JAC),
    1996 WL 924811 (E.D. Mich. Dec. 16, 1996) ........................................................17

*In re MCSi, Inc., et al.,*
    Case Nos. 03-80169 JS - 03-80176 JS (Bankr. D. Md.) ..............................................1

*Nat'l City Bank, et. al. v. Michael Peppel, et. al.,*
    Case No. 04-CV-2660 (Ohio Common Pleas Ct. Mont. County) ...............................3

*Rankin v. Rots,*
    220 F.R.D. 511 (E.D. Mich. 2004) ...........................................................................15

*In re Revco Sec. Litig.,*
    142 F.R.D. 659 (N.D. Ohio 1992) ............................................................................14

In re Rio Hair Naturalizer Prod. Liab. Litig.,
    No. MDL 1055 (GER),
    1996 WL 780512 (E.D. Mich. Dec. 20, 1996) ............................................................8

Robinson v. Ford Motor Co.,
    Nos. 1:04cv00844, 1:04cv00845 (SAS),
    2005 WL 5253339 (S.D. Ohio June 15, 2005) ....................................................7, 9

Senter v.GMC,
    532 F.2d 511 (6th Cir. 1976) ......................................................................13, 15, 16

Smith v. AJAX Magnethermic Corp.,
    No. 4:02cv0980 (PCE),
    2007 WL 3355080 (N.D. Ohio Nov. 7, 2007) ....................................................passim

Stolicker v. Muller,
    No. 1:04-CV-733 (RHB),
    2007 U.S. Dist. LEXIS 26338 (S.D. Ohio Apr. 10, 2007) ............................................7

In re Telectronics Pacing Sys., Inc.,
    137 F. Supp. 2d 985 (S.D. Ohio 2001) ......................................................................10

In re Telectronics Pacing Sys., Inc.,
    168 F.R.D. 203 (S.D. Ohio 1996)...............................................................................17

UAW v. GMC,
    497 F.3d 615 (6th Cir. 2007) ......................................................................................9

Violette v. P.A. Days, Inc.,
    214 F.R.D. 207 (S.D. Ohio 2003) ......................................................................passim

Williams v. Vukovich,
    720 F.2d 909 (6th Cir. 1983) ..................................................................................7, 9

Teachers' Ret. Sys. of La. v. ACLN Ltd.,
    No. Civ. 01-11814 (LAP),
    2004 WL 2997957 (S.D.N.Y. Dec. 27, 2004) ...........................................................14

UAW v. GMC,
    No. 05-CV-73991-DT (RHC),
    2006 WL 891151 (E.D. Mich. Mar. 31, 2006) ....................................................8, 9, 18

## STATUTES AND RULES

Fed. R. Civ. P. 23 ....................................................................................................12, 13

v

Fed . R. Civ. P. 23(a) ...................................................................................13, 16

Fed. R. Civ. P. 23(a)(1) ......................................................................................13

Fed. R. Civ. P. 23(a)(2) ...............................................................................14, 15

Fed. R. Civ. P. 23(a)(3) ...............................................................................14, 15

Fed. R. Civ. P. 23(a)(4) ...............................................................................15, 16

Fed . R. Civ. P. 23(b) .........................................................................................13

Fed. R. Civ. P. 23(b)(3) ..........................................................................16, 17, 18

Fed. R. Civ. P. 23 (c)(2)(B) ...............................................................................18

Fed. R. Civ. P. 23 (e) .................................................................................18, 19

Fed. R. Civ. P. 23 (g) .........................................................................................16

Fed. R. Civ. P. 23 (a)(3) ....................................................................................15

15 U.S.C. § 78u-4(a)(7) .....................................................................................19

## MISCELLANEOUS

7A Charles A. Wright, Arthur A. Miller & Mary Kay Kane,
  *Federal Practice and Procedure* § 1778 (2d ed. 1986) ................................16

*Manual for Complex Litigation (Fourth)*
  § 21.312 (2004) ...........................................................................................19

*Manual for Complex Litigation (Fourth)*
  § 21.632 (2004) .............................................................................................3

## I.  INTRODUCTION[1]

Lead Plaintiffs, Fuller & Thaler Asset Management, Inc. ("Fuller & Thaler") and Paul Bykowski ("Bykowski" and, together with Fuller & Thaler, "Lead Plaintiffs"), respectfully submit this memorandum in support of their motion for preliminary approval of a proposed settlement (the "Settlement") with two former officers of non-party MCSi, Inc. ("MCSi"), Michael E. Peppel ("Peppel") and Ira H. Stanley ("Stanley" and, together with Peppel, "Defendants").  MCSi, which was originally named as a defendant, filed for bankruptcy protection on June 3, 2003.  That proceeding is captioned *In re MCSi, Inc., et al.*, Case Nos. 03-80169 JS - 03-80176 JS (Bankr. D. Md.) (the "Bankruptcy Action" and the "Bankruptcy Court").  Accompanying this motion is a Stipulation and Agreement of Settlement originally dated May 4, 2006, and re-executed in June 2008 (the "Stipulation") (Millkey Decl. Exh. 1), which provides, *inter alia*, for the creation of a cash settlement fund of $2.25 million (the "Settlement Fund").

In determining whether preliminary approval is warranted, the issue before the Court is whether the Settlement is within the range of what might be approved as fair, reasonable and adequate, so that (i) notice of the Settlement should be given to the Class,[2] and (ii) a final hearing should be scheduled to consider the fairness and reasonableness of the Settlement.  The Court is not required at this point to make a final determination as to the fairness of the Settlement.  As shown below, the Settlement meets the criteria for preliminary approval:  it is well within the range of what might be approved as fair, reasonable and adequate.

---

[1] Except as set forth herein, all capitalized terms used in this memorandum are to be understood as defined in the Stipulation (defined above).  The Stipulation and exhibits thereto, and all other exhibits cited herein, are attached to the Declaration of Mark T. Millkey, dated June 11, 2008 (the "Millkey Decl.").

[2] "Class" shall refer to all persons who purchased or otherwise acquired MCSi common stock during the period from July 24, 2001 through February 26, 2003, inclusive (the "Class Period"), and who were damaged thereby.

Entry of the Order Preliminarily Approving Settlement and Providing Notice, which accompanies this memorandum, would: 1) preliminarily approve the Settlement; 2) approve the form of Notice provided in the Stipulation, which describes the terms of the Settlement and Class members' rights with respect thereto, the release of claims, the Plan of Allocation of the Settlement's proceeds, the request for an award of attorneys' fees and expenses, and the procedures for submitting a Proof of Claim form; 3) certify a Class for settlement purposes only, with Lead Plaintiffs as the representatives of the Class and Lead Counsel as class counsel; and 4) set a date for the Settlement Hearing to consider finally whether the Settlement is fair, reasonable and adequate to the Class and should be approved by the Court.

The Settlement is the product of difficult and lengthy arm's-length negotiations by experienced counsel. These negotiations were conducted during and after a mediation conducted with an independent mediator, (Ret.) California Superior Court Judge Daniel J. Weinstein.

The Settlement is a very good result given the costs and risks of continued litigation and limited resources available to pay any recovery. MCSi is no longer in business and the available insurance, which is funding the defense and settlement of both this action and a separate but related action (described below), is likely to become exhausted by continued, prolonged litigation, to the detriment of Lead Plaintiffs and the Class. Defendants' Directors' and Officers' ("D & O") insurance coverage available for claims asserted in this and the other action is $20 million, which is divided into two layers of $10 million each. The primary layer is insured by Federal Insurance Company ("Federal"), and the excess layer by Continental Casualty Company. Before the Settlement, Federal had asserted substantive defenses to coverage.

Presentation of the Settlement to the Court was stalled for more than two years because of a provision in the Stipulation, included at Federal's insistence, that the Bankruptcy Court approve the

release of the D & O insurance proceeds before Federal be required to fund the Settlement.[3] MCSi could not seek that approval, however, before the resolution of issues and disputes over which Lead Plaintiffs had no control – primarily a fee-related dispute in the related action mentioned above. That action, brought in the Common Pleas Court of Montgomery County, Ohio Civil Division, by MCSi's lenders (the "Lender Plaintiffs") against Peppel, Stanley and others, is captioned *Nat'l City Bank, et. al. v. Michael Peppel, et al.*, Case No. 04-CV-2660 (the "National City Litigation").[4] Those issues and disputes were finally resolved in March 2008, and the Bankruptcy Court entered an order on April 28, 2008, authorizing the release of the insurance proceeds, thereby freeing Lead Plaintiffs to make this motion.

The parties are fully conversant with the strengths and weaknesses of this case, and thus can readily evaluate the risks of continued litigation, as well as the fairness of its resolution at this time. In light of these strengths, weaknesses and risks, the Settlement falls within the "range of possible approval." *Manual for Complex Litigation (Fourth)* ("*Manual for Complex Litigation*") § 21.632, at 320-21 (2004). Accordingly, the Settlement warrants preliminary approval.

## II. BACKGROUND

### A. The Litigation

On January 17, 2003, the Action was commenced by the filing of a complaint against MCSi, Peppel, and Stanley, seeking damages for alleged violations of the federal securities laws. Thereafter, six additional complaints were filed. On June 3, 2003, before any of the named

---

[3] Under the Stipulation, Federal is not required to fund the Settlement until after "notification that the Bankruptcy Court has approved the Settlement Agreement and Release by and among the Insurer and the parties to the [related litigation] and thereby approved the Insurer's payment of the Settlement Fund in connection with the Settlement described herein." Stipulation ¶ 5.

[4] The National City Litigation arises from similar facts and circumstances as this Action. As here, the Lender Plaintiffs alleged numerous causes of action against the defendants arising from alleged accounting and other financial improprieties.

3

defendants filed a response to the complaint, MCSi and certain affiliates filed for bankruptcy

protection in the United States Bankruptcy Court for the District of Maryland. As a result, the

securities actions were automatically stayed pursuant to Section 362(a) of the Bankruptcy Code. On

August 15, 2003, Fuller & Thaler moved to lift the stay as to Peppel and Stanley. On February 5,

2004, the Court consolidated the seven lawsuits, and appointed Fuller & Thaler and Bykowski as

Lead Plaintiffs. Three weeks later, on February 26, 2004, the Court granted Fuller & Thaler's

motion to lift the bankruptcy stay as to Peppel and Stanley.

On April 26, 2004, Lead Plaintiffs filed the Amended and Consolidated Class Action

Complaint (the "Amended Complaint"), alleging claims against Peppel and Stanley for misconduct

occurring during the Class Period. MCSi was not named as a defendant because it had filed for

bankruptcy protection. On April 21, 2004, five days before Lead Plaintiffs filed the Amended

Complaint, MCSi filed a Complaint for Declaratory Relief and Injunctive Relief in the Bankruptcy

Court against the plaintiffs in the seven constituent actions consolidated by the Court, seeking to

enjoin the prosecution of the Action. On May 27, 2004, Bankruptcy Judge James F. Schneider

orally denied MCSi's motion. That ruling was later reduced to writing on May 27, 2004.

Thereafter, Peppel answered the Amended Complaint on June 25, 2004, Stanley answered the

Amended Complaint on July 2, 2004, and the parties began to engage in discovery. During

discovery, Lead Plaintiffs reviewed 129 boxes of documents produced by both Defendants and non-

parties. Although no depositions were taken, they were scheduled before the parties' agreement to

mediate their dispute.

On December 2, 2004, Lead Plaintiffs filed a motion for class certification. On February 28,

2005, Peppel and Stanley filed their opposition. During the pendency of the motion, however, the

parties agreed to stay the proceedings to provide them time to negotiate a possible resolution of the

Action. Consequently, the Court did not rule on Lead Plaintiff's motion for class certification.

An order extending the schedule for all pre-trial proceedings was filed on June 23, 2005, staying all proceedings in the Action for 30 days, beginning June 21, 2005, to allow the parties' time to negotiate a possible resolution of their dispute. On July 29, 2005, the Court entered a Stipulation and Order modifying the June 23 order, revising it to extend the stay of proceedings through and including September 30, 2005.

On September 19, 2005, the parties met for a full-day mediation session at the office of JAMS in New York City under the direction of Judge Weinstein. The mediation covered both the Action and the National City Litigation. Although the latter action arises from the same or similar facts and circumstances as this case, it alleges different legal claims, including breach of fiduciary duty, breach of contract, and unjust enrichment, among others. The mediation did not result in an immediate agreement to settle either action, but the parties continued to negotiate, and, on November 21, 2005, the parties to the Action and the National City Litigation, with Federal, agreed to a global settlement of both litigations. The Settlement was reached following extensions of the stay of proceedings and continued negotiations with the assistance of Judge Weinstein.

As noted, the Stipulation did not require Federal to fund the Settlement until after the Bankruptcy Court had approved the National City settlement and the release of the D & O insurance proceeds. *See* fn. 3, *supra* (quoting Stipulation ¶ 5). As a result of a series of issues and disagreements in the National City Litigation, all of which were beyond the control of the Lead Plaintiffs, MCSi was unable to ask the Bankruptcy Court to approve the National City settlement and release the insurance proceeds.[5] Those issues and disagreements were finally resolved in

---

[5] The issues and disagreements included the following: (1) one of the individual defendants in the National City Litigation, Sharmila Rau, did not give her final approval of the settlement in that action until late April or May 2006; (2) one of the Lender Plaintiffs signing the National City settlement agreement turned out not to be the real party in interest, having assigned its interest in a loan to MCSi to another entity; that problem required a revision to the National City settlement agreement, which was not fully executed until late July or August 2006; and (3) a fee dispute, which was the principal cause for delay, arose between the Lender Plaintiffs and the Official Joint

5

March 2008, allowing MCSi to file its Motion for Approval of Settlement and Compromise of Controversies on April 1, 2008, in the Bankruptcy Court. The Bankruptcy Court granted the motion on April 28, 2008, and thus payment by Federal may proceed.

### B. Summary of the Settlement

Under the Stipulation, Federal has agreed to pay a cash amount of $2.25 million (the "Settlement Payment") on behalf of Defendants in consideration for dismissal of the Acton with prejudice and release of all claims. This is a fair and reasonable settlement in light of MCSi's bankruptcy, potential insurance coverage problems, and the risk of continued litigation.

The Federal policy has a $10 million Limit of Liability for each loss and an aggregate Limit of Liability of $10 million during each policy period. In a letter to the mediator, Federal's counsel argued that, because of false statements in the policy application (signed by both Peppel and Stanley), the policy was void *ab initio*. Even if the policy were not void, however, Federal asserted numerous substantive defenses to coverage. The possibility of an absence of insurance coverage – virtually the only source for resolving (and defending) the two litigations – left Lead Plaintiffs with few options for recovery, particularly because MCSi is no longer business.[6]

## III.   ARGUMENT

### A.   The Settlement Warrants Preliminary Approval

#### 1.   The Settlement of This Action Comports with the Public Policy of Encouraging Negotiated Settlement of Private Disputes

Judicial policy strongly favors the negotiated resolution of litigation. *See Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.,* 332 F.3d 976, 979 (6th Cir. 2003); *see also GenCorp,*

---

Committee of Unsecured Creditors of MCSi, Inc., *et al.* (the "Committee"), which is a signatory to the National City settlement agreement.

[6] The National City Litigation ultimately settled for $2.955 million, of which $2.75 million will come from Federal, $155,000 from Peppel, and $50,000 from Stanley.

*Inc., v. AIU Ins. Co.*, 297 F. Supp. 2d 995, 1001 n.7 (N.D. Ohio 2003) ("Ohio public policy favors

settlement . . . ."). This is especially true with respect to class actions. *See Robinson v. Ford Motor*

*Co.*, Nos. 1:04cv00844, 1:04cv00845 (SAS), 2005 WL 5253339, at *3 (S.D. Ohio June 15, 2005)

("The law generally favors the settlement of complex class actions.") (internal citations omitted).

Settlement also spares the parties the expense and delay of litigation and saves the courts the costs

and burden of trial. *See Bank of Am. Nat'l Trust & Sav. Assoc. v. Hotel Rittenhouse Assocs.*, 800

F.2d 339, 350 (3d Cir. 1986).

### 2. The Settlement Merits Preliminary Approval as the First Step to Final Approval

There are three steps to the approval process for a settlement: (1) the court must

preliminarily approve the settlement, (2) members of the settlement class must be notified of the

settlement, and (3) the court must grant final approval of the settlement after holding a hearing to

determine whether the settlement is fair, adequate and reasonable. *Williams v. Vukovich*, 720 F.2d

909, 921 (6th Cir. 1983). A settlement that receives preliminary approval is presumptively

reasonable, and an objector must defeat a heavy burden in proving otherwise. *Williams*, 720 F.2d at

921; *Stolicker v. Muller*, No. 1:04-CV-733 (RHB), 2007 U.S. Dist. LEXIS 26338, at *2-3 (S.D.

Ohio Apr. 10, 2007).

As shown below, the Settlement warrants preliminary approval.

### 3. The Settlement is the Product of Serious, Informed, Non-Collusive Negotiations

#### (a) The Settlement was the Result of Arm's-Length Negotiations and is, Therefore, Presumed to be Fair

When parties conduct settlement discussions with the help of an independent mediator,

courts routinely conclude that the settlement is non-collusive. *See Hemphill v. San Diego Ass'n of*

*Realtors, Inc.*, 225 F.R.D. 616, 621 (S.D. Cal. 2005) (rejecting claim of collusive settlement where

negotiations were supervised by a court-appointed mediator); *see also In re IPO Sec. Litig.*, 226

F.R.D. 186, 194 (S.D.N.Y. 2005). Courts presume the absence of fraud or collusion unless there is

evidence to the contrary. *UAW v. GMC*, No. 05-CV-73991-DT (RHC), 2006 WL 891151, at *21

(E.D. Mich. Mar. 31, 2006) (citing *In re Rio Hair Naturalizer Prod. Liab. Litig.*, No. MDL 1055

(GER), 1996 WL 780512, at *14 (E.D. Mich. Dec. 20, 1996); *IUE-CWA v. GMC*, 238 F.R.D. 583,

597-98 (E.D. Mich. 2006).

The Settlement is the product of well reasoned, arm's-length negotiations between Lead

Counsel and Defendants' Counsel. These negotiations were conducted with the assistance of an

independent mediator both during and after the mediation. During this period, the Parties

exhaustively discussed the merits, strengths and weaknesses of the Action, ability to pay, and risks

of litigation. Based on the foregoing discussions, the Parties were able to negotiate a fair settlement

that they believed to be in their respective interests.

### (b)    The Settlement has No Obvious Deficiencies

The Settlement has no obvious deficiencies. Under the Stipulation, Federal will create a

settlement fund for the benefit of Lead Plaintiffs and the Class of $2.25 million. This is a

significant recovery, particularly in light of the costs and risks of continued litigation and

Defendants' limited ability to pay any judgment. The Settlement provides no preferential treatment

for Lead Plaintiffs or other Class members. Lead Plaintiffs will receive distributions from the

Settlement proceeds calculated in the same manner as the distributions to all other Class members.

Moreover, the Settlement does not mandate excessive compensation for Plaintiffs' counsel.

Plaintiffs' counsel seek an award of attorneys' fees not to exceed thirty three and one-third percent

(33 1/3%) of the Settlement Fund, plus interest and the reimbursement of expenses not to exceed

$200,000. Any award of fees and expenses is subject to court approval.

### (c)    The Settlement Falls within the Range of Possible Approval

"The Court's role 'is not to decide the merits of the case or resolve unsettled legal

questions,' and is 'not to decide whether one side is right or even whether one side has the better of the arguments,' but it 'is to weigh the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement.'" *Bailey v. AK Steel Corp.*, No. 1:06-cv-468 (TSB), 2008 WL 495539, at *1 (S.D. Ohio Feb. 21, 2008) (citing *UAW v. GMC*, 497 F.3d 615, 631-32 (6th Cir. 2007)).

The Sixth Circuit has fashioned a series of factors to assist in weighing the potential risks and rewards inherent in going forward with litigation against the certainty of a compromised solution. While these factors are necessary for a final settlement approval, at this, the preliminary stage, they are relevant only to the fairness inquiry. *See Smith v. AJAX Magnethermic Corp.*, No. 4:02cv0980 (PCE), 2007 WL 3355080, at *6 (N.D. Ohio Nov. 7, 2007) (citing *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 351 (N.D. Ohio 2001)). Factors relevant to the court's evaluation of a settlement are:

> (i) the likelihood of success on the merits weighed against the amount and form of the relief offered in the settlement; (ii) the risks, expense, and delay of further litigation; (iii) the judgment of experienced counsel who have competently evaluated the strength of their proofs; (iv) the amount of discovery completed and the character of the evidence uncovered; (v) whether the settlement is fair to the unnamed class members; (vi) objections raised by class members; (vii) whether the settlement is the product of arm's length negotiations as opposed to collusive bargaining; and (viii) whether the settlement is consistent with the public interest.

*UAW*, 2006 WL 891151, at *14 (citing *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 522 (E.D. Mich. 2003); *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992); *Williams*, 720 F.2d at 922-23; *Berry v. Sch. Dist. of City of Benton Harbor*, 184 F.R.D. 93, 98 (W.D. Mich. 1998); *Robinson*, 2005 WL 5253339, at *4). Judged against the above factors that apply at this stage of the approval process, there is no doubt that the Settlement is within the range of possible approval.

### (1)    The Risks, Expense, and Delay of Further Litigation

Settlements spare the parties the expense and delay of litigation and save courts the burden

of trial and conserve judicial resources. *See Bank of Am.*, 800 F.2d at 350. Courts have consistently

held that the expense and possible duration of litigation are major factors to be considered in

evaluating the reasonableness of a settlement. *See In re Delphi Corp. Sec., Der. & E.R.I.S.A Litig.*,

248 F.R.D. 483, 497 (E.D. Mich. 2008) (citing *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d

985, 1013 (S.D. Ohio 2001)). "For class actions in particular, courts view settlement favorably

because it 'avoids the costs, delays and multitudes of other problems associated with them.'" *See In*

*re Delphi*, 248 F.R.D. at 497 (citing *In re Telectronics*, 137 F. Supp. 2d at 1013).

Because this Action is subject to the provisions of the Private Securities Litigation Reform

Act of 1995 (the "PSLRA"), Lead Plaintiffs faced the risk that their claims would not survive

Defendants' anticipated attacks on a variety of subjects on both summary judgment and at trial,

including: that the challenged statements were neither false and misleading nor material; that

Defendants' alleged false and misleading statements were protected by the Safe Harbor provision of

the PSLRA for forward-looking statements; that Lead Plaintiffs could not establish loss causation;

that Lead Plaintiffs could not prove damages; and that claims by certain Class members were time-

barred. The Settlement eliminates the risk that Lead Plaintiffs and the Class might lose at trial or on

summary judgment or win a smaller recovery, and represents a very good resolution given the costs

and risks of continued litigation (including the costs of deposition discovery) and concerns about

Defendants' ability to pay.

### (2)    The Likelihood of Success on the Merits Weighed Against the Amount and Form of the Relief Offered in the Settlement

As just noted, there were substantial risks to continued litigation. Even if a plaintiffs'

verdict were likely, however, it is unclear that any recovery would be greater than the relief

achieved by the Settlement. MCSi itself is no longer in business, and is not, in any event, a

defendant (because of its bankruptcy). Moreover, Federal has taken the position that the D & O

policy it issued to MCSi was void *ab initio*, or was subject to other defenses to coverage. *See*

Section II.B, *supra*. There is good reason to believe, therefore, that the Settlement represents the

best recovery Lead Plaintiffs and the Class could achieve.

### (3) The Judgment of Experienced Counsel Who Have Competently Evaluated the Strength of Their Proofs

Lead Counsel, which focuses almost exclusively on plaintiffs' securities class action

litigation, and has been selected by THE NATIONAL LAW JOURNAL for five consecutive years as one

of the top litigation firms for plaintiffs in the country, has concluded that the Settlement is a good

result under the circumstances and in the best interests of the Settlement Class. Similarly,

Defendants' Counsel are highly experienced and respected in the area of securities litigation. Thus,

this factor supports preliminary approval of the Settlement. *See, e.g., In re Cardizem*, 218 F.R.D. at

525 (approving settlement that was "negotiated and approved by highly sophisticated

representatives of the Plaintiff Class"); *Bailey*, 2008 WL 495539, at *4 ("Generally courts will give

deference to plaintiffs counsel's determination to settle a case.") (citing *Berry*, 184 F.R.D. at 104).

### (4) The Amount of Discovery Completed and the Character of the Evidence Uncovered

This Settlement comes at a stage when the Parties have completed substantial document

discovery, allowing them to identify the strengths and weaknesses of their case. In addition to their

extensive investigation in support of the Amended Complaint, Lead Counsel have reviewed more

than 400,000 pages concerning MCSi, Peppel, Stanley, and the allegations of the Amended

Complaint. They have interviewed numerous former MCSi employees and consulted with

appropriate experts. Armed with this information, Lead Counsel settled the Action on terms

favorable to the Settlement Class under the circumstances, without the substantial risk, expense,

11

delay, and uncertainty of continued litigation.

In light of these risks, the $2.25 million Settlement is well within the range of possible final approval. Lead Plaintiffs request, therefore, that the Court grant preliminary approval of the Settlement and direct notice of the Settlement to be given to the members of the Settlement Class.

## B.     The Plan of Allocation is Fair to the Class

The Settlement provides for distributions to Authorized Claimants from the Net Settlement Fund pursuant to the Plan of Allocation set forth in the Notice. The Plan of Allocation reflects the inflation and inflationary losses in the stock price of MCSi during and in the 90 days immediately following the Class Period that were found to be reasonably attributable to the misstatements alleged in the Amended Complaint. There is no reason to doubt the fairness of the Plan of Allocation for purposes of preliminary approval. Even at the final-approval stage, "[a]n allocation formula need only have a reasonable, rational basis [to warrant approval], particularly if recommended by 'experienced and competent' class counsel." *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 429-30 (S.D.N.Y. 2001). Accordingly, Lead Plaintiffs request that the Court preliminarily approve the Plan.

## C.     The Class Satisfies the Requirements of Fed. R. Civ. P. 23

The benefits of the Settlement can be realized only through certification of a settlement class.[7] In *Amchem Products, Inc. v. Windsor*, the United States Supreme Court confirmed the viability of class certification for settlement purposes. 521 U.S. 591, 619-29 (1997) (explaining how Fed. R. Civ. P. 23 applies to a proposed class for settlement purposes). The Court may certify the class now, for settlement purposes, upon finding that the action satisfies the four prerequisites of Rule 23(a) and one or more of the three subdivisions of Rule 23(b). *Id.*; *see, e.g., Smith*, 2007 WL

---

[7] This motion supersedes the motion for class certification Lead Plaintiffs filed on December 2, 2004. The Parties agreed to stay the proceedings before the Court ruled on the motion.

12

3355080, at *2-5.

Lead Plaintiffs seek certification of a class of persons or entities (including Lead Plaintiffs and other named plaintiffs) who purchased MCSi common stock during the period July 24, 2001 through February 26, 2003, inclusive.[8] As discussed below, the Class satisfies the requirements of Rule 23. *See, e.g., In re Broadwing Inc. Sec. Litig.*, Civ. A. No. C-1-02-795, slip op. at 2 (S.D. Ohio Nov. 30, 2006) (Rice, J.; listing requirements of Fed. R. Civ. P. 23(a) & (b)(3)) (Millkey Decl. Exh. 2); *In re DPL Inc. Sec. Litig.*, Cons. Case No. C-3-02-355, slip op. at 3 (S.D. Ohio Dec. 22, 2003) (Rice, J.; same) (Millkey Decl. Exh. 3).

### 1. The Class is So Numerous that it is Impractical to Bring All Class Members Before the Court

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[T]here is no reason to encumber the judicial system with [many] consolidated lawsuits when one will do." *Smith*, 2007 WL 3355080, at *2 (citing *Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 105 F.R.D. 506, 508 (S.D. Ohio 1985)). "Impracticability of joinder is not determined according to a strict numerical test but upon the circumstances surrounding the case." *Violette v. P.A. Days, Inc.*, 214 F.R.D. 207, 212 (S.D. Ohio 2003) (citing *Senter v. GMC*, 532 F.2d 511, 523 n. 24 (6th Cir. 1976); *see also Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 131 (1st Cir. 1985)). The numerosity requirement does not require a showing that joinder is impossible, but only that the plaintiff will suffer a strong hardship or inconvenience in litigation if joinder is required. *See Voilette*, 214 F.R.D. at 212-13 (internal

---

[8] As set forth in the Stipulation, excluded from the Class are the following: "Defendants, members of each Defendant's immediate family (parents, spouses, siblings and children), and any person, firm, trust, corporation, officer, director or other individual or entity in which any Defendant has a controlling interest or which is related to or affiliated with any of them, and the legal representatives, heirs, administrators, successors in interest or assigns of any such excluded party. Also excluded from the Class will be any putative Class member who or which properly requests exclusion from the Class." Stipulation ¶ 1(c).

citations omitted).

"The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *Voilette*, 214 F.R.D. at 212-13 (citing *Gen. Tel. Co. of Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980)). Courts regularly find the numerosity requirement satisfied with respect to a putative class of purchasers of nationally traded securities on the volume of outstanding shares. *In re Globstar Sec. Litig.*, No. Civ. 01-1748 (PKC), 2004 WL 2754674, at *3 (S.D.N.Y. Dec. 1, 2004) ("it is not unusual for district courts to certify plaintiff classes in securities actions based on the volume of outstanding shares"); *Teachers' Ret. Sys. of La. v. ACLN Ltd.*, No. Civ. 01-11814 (LAP), 2004 WL 2997957, at *3 (S.D.N.Y. Dec. 27, 2004). Here, during the Class Period, MCSi had in excess of 25 million shares of common stock issued and outstanding, owned by hundreds of geographically dispersed shareholders. Thus, the threshold for a presumption of impracticality of joinder is easily exceeded.

### 2. Lead Plaintiffs and the Class Share Common Legal and Factual Questions

To maintain a class action, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23 (a)(2). "[T]here need be only a single issue common to all members of the class." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1080 (6th Cir. 1996); *see also Violette*, 214 F.R.D. at 213. "Federal securities cases easily satisfy the commonality requirement of Rule 23(a)(2)." *In re Delphi*, 248 F.R.D. at 494 (citing *In re Revco Sec. Litig.*, 142 F.R.D. 659, 661-62 (N.D. Ohio 1992)).

Here, Lead Plaintiffs have alleged that Defendants violated the federal securities laws by misstating MCSi's financial statements and results of operation in publicly disseminated statements during the Class Period. As these misstatements arise from a common course of conduct and affect all Class members similarly, there can be no question that Lead Plaintiffs satisfy the commonality requirement of Rule 23(a)(2).

14

### 3. Lead Plaintiffs' Claims are Typical of the Members of the Class

Typicality under Rule 23(a)(3) is satisfied when the claims of the proposed class representatives arise from the same course of conduct that gives rise to the claims of the other class members, and when the claims are based on the same legal theory. *See* Fed. R. Civ. P. 23 (a)(3); *In re Delphi*, 248 F.R.D. at 494; *In re Am. Med. Sys.*, 75 F.3d at 1082; *see also Smith*, 2007 WL 3355080, at *3 (a class representative must possess the same interest and suffer the same injury as the class members) (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982)). "The purpose of the typicality argument is to assure that the names representatives' interests align with those of the class." *Rankin v. Rots*, 220 F.R.D. 511, 517 (E.D. Mich. 2004).

Here, Lead Plaintiffs' claims are typical of the claims of all Class members. Lead Plaintiffs allege that they purchased or otherwise acquired MCSi common stock during the Class Period at prices that were artificially inflated by Defendants' wrongdoing, and were damaged thereby. These are the same claims asserted by members of the Class.

### 4. Lead Plaintiffs Will Fairly and Adequately Protect the Interests of the Class

Rule 23(a)(4) requires that the class representative fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23 (a)(4). The Sixth Circuit has articulated two criteria for determining adequacy of representation: "(1) the representative must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter*, 532 F.2d at 525 (6th Cir. 1976) (citing *Gonzales v. Cassidy*, 474 F.2d 67, 73 (6th Cir. 1973)).[9]

---

[9] As a result of the 2003 amendments to the Federal Rules of Civil Procedure, the issue of appropriate class counsel is guided by Rule 23(g), rather than Rule 23(a)(4). *See* 2003 Advisory Comm. Notes to Rule 23 ("Rule 23(a)(4) will continue to call for scrutiny of the proposed class representative, while [Rule 23(g)] will guide the court in assessing proposed class counsel as part of the certification decision."); *see also* 5 James Wm. Moore et al., Moore's Federal Practice §

No conflict exists among Lead Plaintiffs and putative Class members. On the contrary, Lead Plaintiffs and each member of the Class have a strong and identical interest in establishing Defendants' liability. Lead Plaintiffs purchased or otherwise acquired MCSi common stock during the Class Period, and allege that they, like the members of the Class, were injured by Defendants' wrongful conduct.

Lead Counsel has demonstrated its ability and willingness to pursue this Action on behalf of the Class. As shown in Lead Counsel's firm résumé (Millkey Decl. Exh. 4), Lead Counsel have successfully prosecuted many class actions on behalf of injured investors. There can be no legitimate dispute that Lead Counsel is capable of effectively prosecuting this Action. Accordingly, the interests of the Class have been fairly and adequately protected.

### 5. This Action Meets the Requirements of Fed. R. Civ. P. 23(b)(3)

Once the prerequisites of Rule 23(a) are met, the Class must also satisfy the requirements of Rule 23(b)(3). *Violette*, 214 F.R.D. at 216 (citing *Senter,* 532 F.2d at 522; *Basile*, 105 F.R.D. at 507). Rule 23(b)(3) is satisfied if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

#### (a) Common Questions of Law and Fact Predominate in This Securities Class Action

Common questions of law or fact predominate if they represent a significant aspect of the case and can be resolved for all class members in a single adjudication. *See* 7A Charles A. Wright, Arthur A. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1778, at 528 (2d ed. 1986). "Common issues need only predominate, not outnumber individual issues." *In re Delphi*, 248

23.25[3] (3d Ed. 2001). For the sake of convenience, however, Lead Plaintiffs discusses the adequacy of counsel here.

F.R.D. at 495 (citations omitted). "Courts have repeatedly found that the Rule 23(b)(3) predominance test is 'readily met' in securities fraud cases." *In re Delphi*, 248 F.R.D. at 495 (citing *Amchem,* 521 U.S. at 625; *In re Kmart Corp. Sec. Litig.*, No. 95-CS-75584-DT (JAC), 1996 WL 924811, at *8 (E.D. Mich. Dec. 16, 1996)).

Here, the issue of liability is common to all members of the Class. As alleged, Defendants misstated MCSi's financial statements and results of operation in publicly-disseminated financial reports, press releases, and other media, causing the market price for MCSi's stock to be artificially inflated for all purchasers during the Class Period. The questions that would have to be answered to determine Defendants' liability are common to all Class members and predominate over any individual questions that might arise: Did Defendants make a statement or omission about MCSi that was not true? Was it a material statement or omission? Did Defendants know, or were they reckless in not knowing, that the statement or omission was not true? Was the price of MCSi's stock affected by the statement or omission? Did Plaintiffs and the Class rely on the statement or omission, or were they entitled to rely on the market to reflect the statement or omission in the price of MCSi stock? Were Plaintiffs damaged by the purchase when the stock price dropped in response to corrective disclosures? What is the measure of the damages?

Thus, Lead Plaintiffs satisfy the predominance requirement of Rule 23(b)(3).

**(b)      A Class Action is Superior to Other Available Methods for the Fair and Efficient Adjudication of This Controversy**

The superiority requirement of Rule 23(b)(3) compels the Court to balance the merits of a class action in terms of fairness and efficiency. *Violette*, 214 F.R.D. at 216 (citing *In re Telectronics Pacing Sys., Inc.*, 168 F.R.D. 203, 221 (S.D. Ohio 1996)). Here, a class action is a superior method of adjudication because the members of the Class have no overriding interest in pursuing their claims individually. *See Violette*, 214 F.R.D. at 216.

This is a typical securities class action, with hundreds of class members. The class action

17

device is the only viable method by which the overwhelming majority of persons injured by

Defendants' wrongful conduct may obtain a remedy; each member of the Class is likely to possess a

claim that is too small to warrant filing a separate action.

**D.      The Notice and Administration of the Settlement is Fair and Will Protect the
         Interests of Class Members**

   **1.      The Notice and Procedure to Disseminate the Notice to the Class is
            Adequate**

Rule 23(c)(2)(B) requires that the Court direct adequate notice to all class members in a

class action certified under Rule 23(b)(3). *See Smith*, 2007 WL 3355080, at *7. Notice must be

"the best notice practicable under the circumstances, including individual notice to all members

who can be identified through reasonable effort." *Amchem*, 521 U.S. at 617. Notice to the class

must contain:

> (1) a statement of the nature of the class action; (2) a definition of the certified class;
> (3) a statement of the class claims; (4) information regarding class members'
> individual right to enter an appearance through counsel of their choice; (5)
> information regarding class members' right to opt-out of the class and the procedure
> for doing so; and (6) information regarding the binding effect of class judgment on
> class members.

Fed. R. Civ. P. 23(c)(2)(B).

The content of the Notice (attached as Exhibit A-1 to the Stipulation) meets the

requirements of Rule 23(e). The form of the Notice includes: (i) the case caption; (ii) a description

of the Class; (iii) a description of the Settlement; (iv) the names of counsel for the Class; (v) the

final hearing date; (vi) a description of class members' opportunity to appear at the hearing; (vii) a

statement of the deadline for filing objections to the Settlement; (viii) a statement of the deadline for

filing requests for exclusion; (ix) the consequences of exclusion; (x) the consequences of remaining

in the Class; and (xi) the manner in which to obtain further information. *See UAW*, 2006 WL

891151, at *32-33 ("The notice 'must "fairly apprise the prospective members of the class of the

terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings.""").

The content of the Notice also meets the requirements of the PSLRA (15 U.S.C. § 78u-4(a)(7)), because the form of Notice includes: (i) a statement of the amount to be distributed, determined in the aggregate and on an average per share basis; (ii) a statement of the potential outcome of the case (*i.e.*, whether there was agreement or disagreement on the amount of damages); (iii) a statement of Lead Counsel's request for attorneys' fees and reimbursement of expenses; and (iv) a brief statement that explains the reasons why the parties are proposing the settlement.

Lead Plaintiffs propose providing individual notice by mailing the Notice, along with the Proof of Claim (attached as Exhibits A-1 and A-2 to the Stipulation), via first-class mail to each member of the Class who can be identified from MCSi's transfer records as purchasers of its securities during the Class Period, as well as to brokerage firms and other nominees who regularly act as nominees for beneficial purchasers of stock, and notice by publication (attached as Exhibit A-3 to the Stipulation) in the national edition of THE WALL STREET JOURNAL.

The methods of providing notice proposed in this case are precisely those recognized as reasonably calculated to notify class members of a proposed settlement under Rule 23(e). *See Manual for Complex Litigation* § 21.312, at 294. As such, Lead Plaintiffs submit that the form notices submitted herewith are adequate and should be approved by the Court.

### 2. The Claims Administrator Will Act in the Class's Best Interests

Lead Plaintiffs respectfully request the appointment of The Garden City Group, Inc. ("GCG") to serve as the Claims Administrator of the Settlement. GCG is one of the largest firms providing claims administration services in the country. It has administered settlements for more than 20 years, including hundreds of securities class action settlements. It has administered many notable securities settlements, including those in the *WorldCom, Nortel, Royal Ahold, Global*

*Crossing*, and *Gilat* litigations. GCG works for both defendants and plaintiffs without taking sides, and considers itself accountable to the Court directly, and bound by the Court's orders and instructions.

As Claims Administrator, GCG will be responsible for, among other things, mailing the Notice to the Class, reviewing claims from Class members, and compiling a distribution schedule to Class members. Lead Counsel is confident that GCG will adequately fulfill its duties in this Action.

## IV. CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request the Court to certify the Class for settlement purposes, grant the motion for preliminary approval of the Settlement, approve the form of the Notice and the plan for disseminating the Notice and Proof of Claim, and set a date for the Final Settlement Hearing.

Dated: June 11, 2008

Respectfully submitted,

**STRAUSS & TROY**
s/Richard S. Wayne
Richard S. Wayne Attorney
Bar Number 0022390
150 East Fourth Street
Cincinnati, OH  45202-4018
P:  (513) 621-2120
F:  (513) 241-8259
Rswayne@strausstroy.com

*Liaison Counsel for Lead Plaintiffs*

20

**BERNSTEIN LIEBHARD & LIFSHITZ, LLP**
Jeffrey M. Haber
Mark T. Millkey
10 East 40th Street - 22nd Floor
New York, NY  10016
P:  (212) 779-1414
F:  (212) 779-3218
Haber@Bernlieb.com
Millkey@Bernlieb.com

*Lead Counsel for Plaintiffs and the Class*

**CHITWOOD HARLEY HARNES LLP**
Craig G. Harley
1230 Peachtree St. NE
2300 Promenade II
Atlanta, Georgia  30309
P:  (404) 873-3900
F:  (404) 876-4476
Charley@chitwoodlaw.com

*Counsel for Paul Bykowski*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION (DAYTON)

|  |  |  |
|---|---|---|
| IN RE MCSi, INC., | : | Case No. 3:03-cv-015 |
| SECURITIES LITIGATION | : | HON. WALTER HERBERT RICE |

## CERTIFICATE OF SERVICE

I hereby certify that I caused (i) Lead Plaintiffs' Motion in Support of Preliminary Approval of Settlement and Class Certification, (ii) the Memorandum in Support of the Motion for Preliminary Approval of Settlement and Class Certification, and (iii) the Declaration of Mark T. Millkey in Support of Lead Plaintiffs' Motion for Support of Preliminary Approval of Settlement and Class Certification to be filed electronically with the U.S. District Court this 11th day of June, 2008. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

In addition, I have caused the aforementioned documents to be served on the following defense counsel by FedEx and by e-mail this 11th day of June, 2008:

**CARTER LEDYARD & MILBURN LLP**
Jeffrey S. Boxer
2 Wall Street
New York, New York 10005
P: (212) 732-3200
F: (212) 732-3232
*boxer@clm.com*

*Counsel for Defendant Michael E. Peppel*

**MORVILLO, ABRAMOWITZ, GRAND,**
**IASON, ANELLO & BOHRER, P.C.**
Lawrence Iason
565 Fifth Avenue
New York, New York 10017
P: (212) 856-9600
F: (212) 856-9494
*liason@maglaw.com*

*Counsel for Defendant Ira H. Stanley*

I have also caused the aforementioned documents to be served on the following defense

counsel by e-mail this 11th day of June, 2008:

**WHITE, GETGEY & MEYER CO., L.P.A.**
David P. Camp
1700 PNC Bank Tower
1 West Fourth Street
Cincinnati, OH 45202
P: (513) 241-3685
F: (513) 241-2399
*dkamp@wgmlpa.com*

*Counsel for Defendant Michael E. Peppel*

**BOUCHER & BOUCHER CO., L.P.A.**
Roger J. Makley
12 West Monument Avenue, Suite 200
Dayton, OH 45402
P: (937) 223-0122
*makley@boucherandboucher.com*

*Counsel for Defendant Ira H. Stanley*

                       s/Richard S. Wayne
                       Richard S. Wayne Attorney Bar Number 0022390
                       150 East Fourth Street
                       Cincinnati, OH 45202-4018
                       P: (513) 621-2120
                       F: (513) 241-8259
                       Rswayne@strausstroy.com

                       *Liaison Counsel for Lead Plaintiffs*